UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CORNELIUS JAMES, III,

        Petitioner,

v.                                  Case No. 3:16-cv-491-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

Petitioner Cornelius James, an inmate of the Florida penal system, initiated this action on April 20, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1), with an attached memorandum in support of the Petition (Memorandum; Doc. 2). In the Petition, James challenges a 2012 state court (Duval County, Florida) judgment of conviction for attempted second degree murder and possession of a firearm by a convicted juvenile delinquent. James raises three grounds for relief. See Doc. 1 at 5-9.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Resp.; Doc. 22) with exhibits (Resp. Ex.). James submitted a brief in reply on October 20, 2017. See Reply to Respondent's Answer to Court's Order to Show Cause (Reply; Doc. 23). This case is ripe for review.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Procedural History

On March 10, 2011, the State of Florida (State) charged James, by way of amended Information, with attempted second-degree murder (count one) and possession of a firearm by a juvenile delinquent found to have committed a felony act (count two). Resp. Ex. A at 43-44. James proceeded to a jury trial, at the conclusion of which the jury found James guilty as charged as to each count, with a specific finding that James possessed and discharged a firearm during the commission of the attempted murder charged in count one. Id. at 286-87. On January 19, 2012, the circuit court sentenced James to a term of incarceration of thirty years in prison, with a twenty-year minimum mandatory as to count one, and fifteen years in prison as to count two. Id. at 352-54. The circuit court ordered each count to run concurrently. Id. at 353.

On direct appeal, James raised two issues in his initial brief: the circuit court committed fundamental error when it failed to instruct the jury on attempted voluntary manslaughter (issue one); and the circuit court erred in admitting into evidence an irrelevant and highly prejudicial letter that James wrote (issue two). Resp. Ex. D at 12-20. The State filed an answer brief. Resp. Ex. E. On February 15, 2013, Florida's First District Court of Appeal (First DCA) per curiam affirmed the judgment and sentences without a written opinion, Resp. Ex. F, and on March 5, 2013, issued its Mandate. Resp. Ex. G.

On September 13, 2013, James filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. H. James subsequently filed a motion to withdraw his Rule 3.850 motion on September 24, 2013, Resp. Ex. I, which the circuit court granted on November 25, 2013. Resp. Ex. J. Thereafter, on January 29, 2014, James filed another motion for postconviction relief pursuant to Rule

3.850 (Rule 3.850 Motion). Resp. Ex. K at 1-15. In his Rule 3.850 Motion, James alleged that his trial counsel was ineffective for: failing to request a pretrial suppression hearing (ground one); conceding his guilt (ground two); failing to request a jury instruction for attempted voluntary manslaughter (ground three); and failing to object to a double jeopardy violation (ground four). Id. On March 19, 2015, the circuit court struck ground two of the Rule 3.850 Motion as insufficiently pled and gave James leave to amend. Id. at 31-32. In response, James filed an amendment to his Rule 3.850 Motion (Amended Rule 3.850 Motion) in which he re-alleged ground two. Id. at 34-42. On October 28, 2015, the circuit court denied both motions. Id. at 44-51. The First DCA per curiam affirmed the circuit court's denials on February 9, 2016, without a written opinion, Resp. Ex. M, and issued its Mandate on March 8, 2016. Resp. Ex. N.

### III. One-Year Limitations Period

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise

precludes habeas relief, a district court is not required to hold an evidentiary hearing."

Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record

before the Court. Because the Court can "adequately assess [James'] claim[s] without

further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an

evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a

state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga.

Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137

S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief

functions as a guard against extreme malfunctions in the state criminal justice systems,

and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38

(2011) (quotation marks omitted)). As such, federal habeas review of final state court

decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey,

662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision,

if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr.,

828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion

explaining its rationale in order for the state court's decision to qualify as an adjudication

on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's

adjudication on the merits is unaccompanied by an explanation, the United States

Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747–748, 111 S. Ct. 2546; Sykes,[5] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

"[A] claim for ineffective assistance of counsel, if both exhausted and not procedurally defaulted, may constitute cause." <u>Henry v. Warden, Ga. Diag. Prison</u>, 750 F.2d 1226, 1230 (11th Cir. 2014); <u>see also</u> <u>Carrier</u>, 477 U.S. at 488; <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000)) ("An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a procedural default."). But the petitioner must first present his or her ineffective assistance claim to the state courts as an independent claim before he may use it to establish cause to excuse the procedural default of another claim. <u>Carrier</u>, 477 U.S. at 488; <u>see also</u> <u>Henderson v. Campbell</u>, 353 F.3d 880, 896 n.22 (11th Cir. 2003). If the secondary ineffective assistance claim is itself procedurally defaulted, the "procedurally defaulted ineffective assistance of counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself." <u>Henderson</u>, 353 F.3d at 897 (citing <u>Edwards</u>, 529 U.S. at 446 and <u>Carrier</u>, 477 U.S. at 478).

---

[6] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

James alleges that his trial counsel was ineffective for failing "to move for a pre-trial suppression hearing in reference to prejudicial testimony [which] was presented to [the] magistrate to invoke the jurisdiction of the court by misrepresentation of facts to

obtain [a] warrant." Doc. 1 at 5. In his Memorandum, James contends that a false affidavit supported the warrant issued for his arrest and, therefore, counsel should have challenged the legality of the warrant. Doc. 2 at 7-12. Specifically, James avers that the State did not have a sworn statement from Bertram Price and "did not set forth particular facts and circumstances underlying the legal existence of probable cause." Id. at 9.

James raised a similar claim in his Rule 3.850 Motion. Resp. Ex. K at 5-6. In denying this claim, the circuit court stated:

> In Florida, an information charging the commission of a felony must be based upon the sworn testimony of a material witness to the charged felony. Fla. R. Crim. P. 3.140(g). The material witness testimony required by this rule may be taken by a person other than the assistant state attorney and may be received and considered by the assistant state attorney prior to filing the information. State v. Hartung, 543 So. 2d 236, 237 (Fla. 5th DCA 1989). Further, "[w]here a defendant waits until after the State rests its case to challenge the propriety of an indictment [or information], the defendant is required to show not that the indictment [or information] is technically defective, but that it is so fundamentally defective that it cannot support a judgment of conviction." Ford v. State, 802 So. 2d 1121, 1130 (Fla. 2001) (emphasis added); State v. Burnette, 881 So. 2d 693, 694 (Fla. 1st DCA 2004).

> Detective Chizik was an investigating officer for this case. In his arrest report, Detective Chizik stated he spoke to the victim and spoke to Detective Nelson who interviewed a witness to the shooting, Randall Harvey ("Harvey"). According to Detective Chizik's sworn testimony, the victim reported he was at the fair when one of his friends got into a fist fight with another male, Willie Addison ("Addison"). The victim stated that he approached Addison's friend to fight him and that Addison's friend shot him in his left leg. When shown a photo lineup, the victim positively identified Defendant. Harvey's statements mimicked the victim's story, and Harvey also positively identified Defendant as the individual who shot the victim. Thus, the investigating officer, as well as the victim and eye-witness all qualify as material witnesses. Consequently, the Information in the instant case was based on the sworn testimony of such. Therefore, Defendant has failed to

demonstrate error on the part of counsel for not challenging the Information.

Moreover, upon review, the Amended Information properly charged Defendant with Attempted Murder in the Second Degree and Possession of a Firearm by a Juvenile Delinquent. That is, the Amended Information contained a sufficiently detailed allegation of the essential elements of the respective charges, including specific reference to the appropriate sections of the criminal code, Defendant's name, and the time and place of the commission of the offenses. Therefore, the Amended Information was not fundamentally defective, and properly conferred subject matter jurisdiction upon the trial court. See Fla. R. Crim. P. 3.140(o) ("No . . . information . . . shall be dismissed . . . unless . . . [it is] so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense."); Ford, 802 So. 2d at 1130. Accordingly, Defendant is not entitled to relief on this ground.

Id. at 46-47 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial. Resp. Exs. M; N.

To the extent that the First DCA decided this claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, James is not entitled to relief on the basis of this claim.

_____

[7] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground One is without merit. As an initial matter, the Court finds this claim is due to be denied as conclusory because although James alleges that he "had actual and bona fide proof that the affiant misrepresented facts," James has not provided the Court with any such proof. See Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011) (Rules Governing Section 2254 Cases in the United States District Court "mandate 'fact pleading' as opposed to 'notice pleading.'"); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (holding that conclusory allegations of ineffective assistance of counsel are insufficient to merit habeas relief). Moreover, James' objections to any hearsay are misplaced as hearsay may form the basis for issuance of a warrant so long as there is a substantial basis for crediting the hearsay. United States v. Ventresca, 380 U.S. 102, 108 (1965). Notably, a victim of a crime is presumed to be trustworthy for purposes of establishing probable cause in an affidavit for a warrant. State v. Hood, 68 So. 3d 392, 396 (Fla. 2d DCA 2011) (citing State v. Novak, 502 So. 2d 990, 992 (Fla. 3d DCA 1987)). Here, the affidavit for the arrest warrant reflects that the victim told the affiant, Detective Chizik, that James was the individual who shot him, and the victim picked James out of a photo lineup. Accordingly, the victim's statements to police identifying James as the offender were sufficiently trustworthy to establish probable cause for his arrest. See Ventresca, 380 U.S. at 108; Hood, 68 So. 3d at 396. As such, counsel cannot be ineffective for failing to raise a meritless argument. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th

Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

To the extent James challenges the affidavit as not containing written statements from a material witness, the Court finds this argument unavailing as well. Florida Rule of Criminal Procedure 3.121 governs arrest warrants and nothing within that rule requires written statements from victims. See Fla. R. Crim. P. 3.121; see also Johnson v. State, 660 So. 2d 648, 654 (Fla. 1995) (citations omitted) (noting that "[u]nlike the burdens of proof in a criminal trial, the obligation to establish probable cause in an affidavit may be met by hearsay, by fleeting observations, or by tips received from unnamed reliable informants whose identities often may not lawfully be disclosed among other reasons."). Accordingly, any objection or challenge to the arrest warrant on these grounds would have been meritless and counsel cannot be found ineffective for failing to raise a meritless argument. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Based on the above, the relief James seeks in Ground One is due to be denied.

### B. Ground Two

In Ground Two, James contends that his trial counsel was ineffective for conceding his guilt at trial without James' consent. Doc. 1 at 7. According to James, during closing arguments his counsel made several comments that amounted to admitting James' guilt "of some sort of criminal act, while at the same time attempting to seek a lesser included charge or attempting to obtain mercy." Doc. 2 at 14.

In his Amended Rule 3.850 Motion, James raised a similar claim as that raised here. Resp. Ex. K at 37-40. The circuit court denied this claim, explaining:

> This Court has reviewed the entirety of trial counsel's
> closing argument, including the specifically referenced pages,

and finds counsel made no concession of Defendant's guilt. Rather, throughout the entirety of counsel's argument, he maintains that the State had not proven Defendant was at the scene of the crime, let alone, committed the instant offenses. He then, contingently argued that even if the jury believed Defendant was the one with the gun, the State had not proven intent, because the person in front of the victim was running and turned to shoot behind him in self-defense as there were eight to thirteen males running towards him. Moreover, counsel did not state that individual was Defendant, rather he said "[t]his guy in front of the [the victim]." Therefore, this Court finds Defendant has not shown any deficiency in counsel's argument, and Defendant is not entitled to relief on this ground. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Id. at 48 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial. Resp. Exs. M; N.

To the extent that the First DCA decided this claim on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, James is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, the claim in Ground Two is without merit because the record refutes it. Having

---

[8] In accordance with Wilson, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. Wilson, 138 S. Ct. at 1194.

reviewed the entirety of trial counsel's closing arguments, the Court finds that, contrary to James' allegations, trial counsel did not concede James' guilt during closing arguments. Resp. Ex. B at 541-75. Counsel specifically argued James did not possess a firearm. Id. at 547, 561. Counsel further argued the State failed to present reliable evidence implicating James as the shooter and outlined how the testimony of various state witnesses changed from their depositions to their trial testimony. Id. at 542-61. After arguing the State failed to prove James was even there, counsel then made an alternative argument that, even assuming James was present at the scene, James was acting in self-defense. Id. at 562-70. Immediately thereafter, counsel again returned to the argument that the State had failed to prove James was present at the scene and that the victim did not suffer great bodily harm. Id. at 570-75. This record refutes James' allegations of deficient performance and prejudice. As such, the claim in Ground Two is due to be denied.

## C. Ground Three

James maintains that his trial counsel was ineffective for failing to raise attempted voluntary manslaughter as a defense and failing to seek a jury instruction on the same. Doc. 1 at 8.

James raised a similar claim in his Rule 3.850 Motion as ground three. Resp. Ex. K at 8-10. In denying this claim, the circuit court ruled:

> Defendant suggests counsel was ineffective for failing to require a category one lesser included offense instruction on Attempted Voluntary Manslaughter. "Under Strickland, a defendant cannot, as a matter of law, demonstrate prejudice by relying on the possibility of a jury pardon, which by definition assumes that the jury would have disregarded the law, the trial court's instructions, and the evidence presented." Sanders v. State, 946 So. 2d 953, 956 (Fla. 2006). "Therefore,

> a claim alleging ineffective assistance of counsel for failure to
> request an instruction on a lesser-included offense may be
> summarily denied." <u>Id.</u> at 960. Accordingly, this ground is
> denied.

<u>Id.</u> at 48. The First DCA per curiam affirmed the circuit court's denial. Resp. Exs. M; N.

To the extent that the First DCA decided this claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, James is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, James is not entitled to relief. Underlying James' claim of prejudice is the idea that the jury would have found him guilty of attempted voluntary manslaughter had counsel argued this as a defense and had the instruction been read to the jury. However, the jury specifically found that the State proved each element of count one beyond a reasonable doubt; therefore, James' prejudice allegation relies solely on the conceptual possibility of a jury pardon. The possibility of a jury pardon, however, cannot establish prejudice under <u>Strickland</u>. <u>See</u> <u>Sanders</u>, 946 So. 2d at 959-60 (holding that although the failure to instruct the jury on a necessarily lesser included offense can be per se reversible error on direct appeal, the mere possibility that the jury might have exercised its "pardon

---

[9] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

power" "cannot form the basis for a finding of prejudice" to support an ineffective assistance of counsel claim in a postconviction motion); Strickland, 466 U.S. at 694-95 (noting in determining whether prejudice exists, a court should presume the "jury acted according to the law," and "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed."). As James cannot demonstrate prejudice here, his claim of ineffective assistance of counsel fails. See Ward, 592 F.3d at 1163. Accordingly, as to Ground Three, the Petition is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If James seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, James "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484.

However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If James appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of January, 2019.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:     Cornelius James, #J46200
        Anne Conley, Esq.